Thank you. Please be seated. Good morning, ladies and gentlemen. The first case on the call this morning, agenda number one, is docket number 121823, People v. Ricardo Vara. Counsel, are you ready? And are you? You may proceed. Good morning. May it please the Court. Counsel, I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois. The issue in this case are errors in a printout of the Stephenson County Circuit Clerk's electronic account receivable records. I hold it in its status information. It mistakenly fails to reference a $1,000 fine that a certain $130 of fines that, although mandatory, the Circuit Court did not order. So the question in this case is where should these kinds of clerical errors be corrected? In the Clerk's Office or Circuit Court or in the Appellate Court? And there are two main reasons why clerical errors like this should be corrected by contacting the Clerk or the Circuit Court and not by raising them in the first instance on appeal. The first is that the Appellate Court has jurisdiction to hear appeals. And the second is that this practice of correcting clerical errors in extradictory documents in the Appellate Court, when those errors could be corrected elsewhere, either by contacting the Clerk or by contacting the state's attorney and filing an agreed motion for excurbance error in the Circuit Court, this practice is wasteful of judicial resources in a way that actually detriments indigent defendants. I'll start with a jurisdictional problem. The Appellate Court has jurisdiction to hear appeals from final orders of the Circuit Court. And there's a good reason for this. Final orders of the Circuit Court have the force of law. And absent the intervention of higher court, they are legally binding. There is no recourse absent an appeal. Extra-record clerical documents, the same cannot be said of extra-record clerical documents. They don't have the force of law. They're not orders. They're references to orders. And so, for example, if in the clerk's docket, in this case, defendant was sentenced to three years. If in the clerk's docket entry for the sentencing hearing date, the clerk wrote down court sentence found guilty, sentenced to 30 years rather than three years, that's certainly inaccurate and it should be corrected. But it's not an order. It doesn't have the force of law. Defendant does not now have an obligation or is not bound to spend an additional 27 years in prison due to the void order of the Circuit Court in this docket entry. And the same is true of these electronic accounts receivable records that were printed out in payment status information. It erroneously refers to the court's written sentencing order which imposed $2,200 in fines. But the inaccuracies are not themselves legally effective. The omission of the $1,000 fine that the trial court imposed does not relieve defendant of his legal liability under the sentencing order for that $1,000. And the erroneous reference to $430 worth of fines that were not imposed by the court similarly does not create some additional $430 worth of liability. They're simply clerical errors that although they should be corrected because if not, they can cause confusion and disruption, it's not that unless they are corrected by the appellate court, they have independent legal effect. May I ask a question? I'm trying to think about where did this case go off track. It appears to me that it went off track in the trial court, in the sentencing hearing. The state participate in the sentencing hearing? Did the state could certainly have pointed out, Your Honor, this judgment order that you just uttered does not comply with the statute, these are mandatory. The state didn't object, didn't participate in this, didn't correct the error in the moment in the trial court, correct? That's correct. Does that have any significance? Has this issue been forfeited in some way? No, because the issue is jurisdiction. We're not, our primary argument is not that these fines should be reimposed on appeal, but rather that these fines don't exist. The fines the defendant seeks to have vacated were never imposed. They're simply artifacts of a data entry error in an extra record document. So even though they're mandatory, statutorily mandatory, they don't exist? They don't exist unless they're imposed by the circuit court. So the $430 worth of fines that, although mandatory, the trial court failed to impose, don't exist unless and until, under the laws as it is now, the state files an original mandamus action in this court to get those $430 worth of fines imposed. And yet, we see the appellate court routinely hearing appeals where the only issue is challenges to data entry errors in these extra record documents. And part of the confusion may be that now that we are living in the 21st century and everything is printed out and looks very official, it has a stamp from the clerk's office saying this is a document that we have on file in our office, it kind of looks like an order. But if you imagine that the same information recorded on a different sheet of paper, it would be immediately clear that this is not a document that creates a legal obligation. If one defendant had contacted the clerk's office and asked for a list of all the fines assessed in this case, the clerk had said our printer is down, but I can just read them off the screen to you, and I'll write them down on the back of this post-it note, and then handed that over. No one would ever think that that post-it note is a void order of the circuit clerk that would provide a basis for appellate jurisdiction. Mr. Schneider, I'm most interested in hearing your pitch on sending this to rules. I mean, we don't want mandamus actions, do we, on every fine case, whether imposed correctly or incorrectly? Probably not. It seems like a poor use of this Court's resources, especially because these are very straightforward cases. If you have a case where the appellate court has reviewed these clerical errors where there's a bunch of mandatory fines that were imposed when they shouldn't have been or were not imposed when they should have been, and the parties are almost uniformly always in agreement as to what should have been done, the problem is, as Justice Heist points out, no one raised it in the first instance in the trial court. Someone dropped a sketch, and now how do we correct it? Under the laws as it is now, the only way to correct it is to bring these $5 and $10 and $100 fines to this Court, where the parties would then file briefs agreeing that that fine should have been imposed. There's no reason that these sorts of errors could not be corrected by the trial court if the trial court had an opportunity to correct them. But due to all sorts of circumstances beyond the trial court's control, the volume of cases, problems with software glitches on a particular day, someone just not having had their coffee that morning, the law having changed and someone not caught it in time, these sorts of things can slip through the cracks, and especially because they're not the big-ticket items that the parties are really concerned about. People are looking at... But may I stop you there? That is specifically what concerns me, not the fine or maybe the MSR problems, but you've suggested something like maybe the law has changed. I mean, we've been very, very careful about final judgments and when they can be attacked and very precise about the accessory devices that we use, that can be used to attack final judgments. So we certainly wouldn't want to open the door to going back to the circuit court years later and arguing now the law has changed and the sentencing should be different. Certainly not. What I meant when I said the law has changed is when fines are created, there are fines created all the time, there are fines that are adjusted, the MSR term may be changed. So it may be that the parties, the public defender's office and the prosecutor's office, they've been acting under the practice that for this particular offense, it's a one-year MSR term. And then that MSR statute is changed in a way that would be applicable to the defendant who's being sentenced in a particular case, but because people have not noticed that it had been changed right before he committed his offense, they may not have caught it. That's what I meant. Certainly the finality of judgments is an important consideration, but the collateral challenges that would be available under this new mechanism of a motion or a petition to correct statutorily unauthorized sentences is essentially the same mechanism that was previously available under the Floyd Judgment Rule, which is all we're looking at is, is the sentence that was imposed, was it lawful under these sentencing laws in effect at the time of sentencing? So was it shorter than the minimum? Was it longer than the maximum? Did it omit a mandatory enhancement? Did it omit a mandatory fine, including a proper fine? A dispute about the statutory interpretation of the sentencing statute. Would that be resolved in this type of motion? Only if it was a dispute as to what was mandated. If there's any sort of discretion involved, then it wouldn't be a statutorily unauthorized sentence. So, and it's true, there will be occasional cases where it's not perfectly cut and dry, but one of the benefits of allowing the only statutorily unauthorized sentences to be challenged in this sort of vehicle is that it revives the body of jurisprudence that had previously been created under the Floyd Sentence Doctrine, because under the Floyd Sentence Doctrine, only sentences that were statutorily unauthorized could be challenged at any time on appeal. And what that meant was the appellate court routinely was looking at statutes and determining what was actually authorized under this particular statute. Were these mandatory consecutive? Was there a mandatory 25-year enhancement for this particular offense? And so we have a wealth of precedent that the circuit court and the parties could rely upon, but that's, again, going to be in the margins of the cases. The vast majority of these are going to be MSR terms, fines, if it's mandatory consecutive and it wasn't. The occasional lawmen of the maximum and minimum sort of case, which are very straightforward and will likely be agreed between the parties. Counsel, is there a difference between a case in which mandatory fines are improperly imposed by the circuit court clerk and a case in which mandatory fines are never imposed for the purposes of how you think that the circuit court should handle this? I'll be honest. It's a tricky question, because the word imposed suggests that the clerk's actually done something. So if we imagine a world where the clerk has simply created an erroneous extra record document that refers to fines that were not created. So it was never imposed by the court. It was never imposed by the court, but it also hasn't been imposed by the clerk, because the clerk has not created a legal obligation. The clerk has created an inaccurate internal record. So how does one deal with this, that situation, a circuit court clerk? So circuit court clerk. So I'm defense counsel, and I've contacted the clerk's office and discovered that there is a record-keeping error. The fines listed in the counterceivable records don't line up with the fines imposed by the court. Well, I can call the clerk's office back and say, I noticed that there's a clerical error. And they may say, oh my gosh, I'm so sorry, and correct it. They may say, you know, we're not comfortable changing any of our counterceivable line entries without the order of the court, in which case counsel could then contact the state's attorney and say, we noticed there's a clerical error. The state's attorney will almost certainly agree that there is an error, and on appeal, certainly, the state appellate prosecutor almost uniformly concedes error when they discover that one of these clerical records is inaccurate. So it's really just a question of bringing it to the court's attention. And there could be a motion to correct Scrivener's error. However, if there's not an appeal and it's discovered, under your scenario about having a circuit court do it, how would a circuit court be able to do that? Well, there wouldn't be a jurisdictional bar because it wouldn't be affecting any order of the court. It would really be a housekeeping matter. So for the same reason that, say, counsel notices that there's a typo in the defendant's address in the clerk's records, and they say, well, that's not right. He's not going to get a notification of various orders that are entered, or if these fines are reduced to a bill, he was mailed the bill, the bill won't go to the right place. So we need to correct that. But we've already filed a notice of appeal. There would be no impediment to counsel contacting the clerk's office and saying, we've noticed that there's an error in our address or bringing it to court. But that's different than not having anything on the topic in the order itself, the final appealable order. It doesn't even mention the $1,000 fine, as opposed to correcting something that was $1,000 or $500. Well, the clerical document that we're trying to correct has no impact on the order entered by the court. The fines in this case are only the fines ordered by the court, to the extent that some other document somewhere else erroneously refers to fines that were not imposed by the court, erroneously omits reference to fines that were imposed by the court. That's a record-keeping issue. That's not an appellate issue. And so that seems like it would just be collateral to anything that could possibly be on appeal, because the references to those fines in the clerical document aren't part of the defendant's sentence. If he's appealed from his sentence, then all of the proceedings that led up to that sentence that may have contributed to that sentence in the judgment of conviction, an extra-record document created two years after that order couldn't possibly be part of that appeal. Nor could it be enforced. Right, exactly. One can imagine, let's say that the appeal had concluded. Again, this document was created two years after the Notice of Appeals was filed. So presumably when the Notice of Appeals was filed, it was not filed with this clerical error in mind. No one knew it existed. So suppose that defendant's direct appeal had concluded before that document was obtained. Then he gets this document and goes, oh, there's an error here. By defendant's reasoning, this is as a void order of the circuit. The clerk could then be appealed. Or if it was reduced to a bill and he received this bill, he could appeal from that bill. It seems like the sensible approach would be to contact the clerk's office and bring the error to their attention. If the clerk's office is unwilling to correct it without a court order, bring it to the circuit court's attention. I'm sorry. I'm not sure if I've answered your question. Yes. If I understood you correctly, you said if it does not affect an order of the court, there's no jurisdictional problem if it's simply a clerk's entry on an accounts receivable or some sheet. Does that also hold true if there was a mandatory assessment or fine that was not assessed, which then has to become part of the court order to become enforceable? And this is done a year or two after the case is closed. So if we have a case where the court neglected to impose, as in this case, neglected to impose a mandatory fine, the only way that we can currently get that fine added is to bring it to this court. So there's no way they could have contacted the clerk's office or the circuit court and affected it then. And that's what you're suggesting should be a rule change to waive problems with regard to the circuit court losing jurisdiction after 30 days. That's exactly right. The 21 states that do exactly that, are they only statutory unauthorized sentences that they're allowing motions back in the trial court? I can't speak to specifically how it's applied in every state, and the rules they use sometimes characterize it differently. Sometimes they'll say unlawful sentences. My understanding is that that is only certain sentences that are unlawful under the applicable law rather than unlawful due to an arguable misbalancing of factors or that sort of thing. To the extent that any of those states were simply reopening sentencing, if anyone had any complaints about their sentence, we would argue that the court should certainly not adopt that approach. There is an interest in finality and an interest not served by having an open-ended window for a challenge. Under your proposal, would there be any kind of time limit at all? In other words, suppose it's not caught for the defendant served a sentence and not caught for years, and somebody goes through with it. Well, we would think there wouldn't. There might be an application for latches. If the state, for some reason, waited for someone sentenced to 20 years and the minimum was 25, he's served 19 and a half years, and the state were to suddenly swoop in and say, oh, by the way, if you wait an extra five years, there might be an actual argument that at that point it's no longer permissible. But it's hard to imagine too many cases where that would be the case, because for the most part, fines are the majority of these, and these sorts of things are discovered usually on direct appeal on some of the first notices. And if someone was given a sentence below the minimum, normally the state will catch that. Again, the reason that these fines seem to slip through the cracks and occasionally MSR terms is because the big ticket items, the years in prison, the large fines, are things that people are attending to, and that's why they haven't noticed that there wasn't the $10 this fine or the $5 that fine. Would there be any disincentive then to make sure everything's correct by that proposition? I don't think so, honestly, because it's not like it makes life easier for the defender or the state's attorney to have to come back and do this again. They can either do it right the first time or have to come back and do it again. But under the current practice, I'm assuming, because the way we see it, the appellate defender takes on that responsibility to basically double-check and thoroughly look at what the underlying order is. So would they be maybe not looking so carefully? They're just looking at, as you said, the big ticket items. I suppose it's possible. One would hope that when they've requested the list of fines or the list of the assessments, that they would do that regardless of whether it's going to be an issue that's available on appeal as just part of the reputation of the client's interest. They can certainly refer it to the public defender to raise this in the trial court or contact the state's attorney. They call the clerk to get it and call it back. I can see my time is up. Thank you, Mr. Schneider. Ms. Montgomery? Good morning, Your Honors. Counsel. May it please the Court, I'm Jamie Montgomery, Assistant Appellate Defender in the Office of the State Appellate Defender, appearing on behalf of the appellee, Mr. Ricardo Barra. I'm just going to jump right into the rule issues, since that's what we seem to be talking about the most. And notably, I think the fact that we're talking about that the most is the reason why this needs to go through the normal rulemaking process of following Supreme Court Rule 3, going through committee, having public hearings, because there are a myriad of issues to consider here, and that's the very reason that the rulemaking procedure exists. Your Honors have all voiced concerns about how this rule would work, and these are all things that need to be considered, additionally other issues with just making a rule here with the timing and everything that's been brought up. The, you know, something to be considered is whether or not making a rule like this would effectively amend Rule 615B, which would then allow the state to increase sentences on appeal, which this Court has routinely rejected as not being constitutional. I don't know whether the states that, the 21 states that have similar rules, I don't know what their case law is about whether or not, you know, how this squares with increasing a sentence, because here in Illinois. Would that apply, though, as far as 615B? Would it apply when we're dealing with mandated sentences that were in error? Would that be under the traditional increase in sentence analysis? Well, that's something that needs to be considered. The fact is here in Illinois, for at least 25 years, this Court has said strongly that a fine is a part of the sentence. Fines are pecuniary. They are punishment. Whether or not they're deemed sort of the throwaway thing that nobody's considering, they are, in fact, punishment. They are part of the sentence. And if the judge did not impose them at the time of sentence, going back later and getting them, whether they're mandatory or not, is an increase on the sentence, as was ordered by the Court. But the state could do the same thing through mandamus, right? They could. But that would require the state to. And it has. Yes. It has done the same thing. And it hasn't been analyzed as an increase in the sentence if it was a mandatory sentence that was ignored, right? Right. And that's where the Court's recent decision in Castleberry comes in. We know that the void sentence doctrine now has been abolished. Counsel averred earlier to the rule being an opportunity for this Court to revive the void sentence doctrine. And whether that's something this Court wants to do when it just took pains to abolish it as unconstitutional seems questionable to me. But I do understand the concerns of the appellate courts that have written several opinions, voicing concerns about the amount of time and money that is spent on these issues. However, another issue to consider in the rulemaking process is to what extent it might be useful for circuit court judges to have the ability to waive fines and fees in situations where defendants are basically judgment-proof. If someone's spending the rest of their life in prison, you're very unlikely to get $2,000 in fines out of them. And to the extent that right now when a judge. . . I mean, we see cases where judges waive any fines and fees because they think they can. And then you turn around and you get a case where the records of the clerk's office reflect that the clerk imposed mandatory fines because they're mandatory, so they have to impose them. Well, the clerk just acted as a judge imposing a sentence and frustrated the intent of the circuit court. And, of course, the circuit court, as I said, doesn't have the discretion to waive the fines, but perhaps that's something to consider when this goes to rulemaking or something for the legislature to consider. And stepping over to the issue about whether this is an order. Well, printout from the clerk's office is the court's record of what the judgment was. And the state wants to make a lot of. . . It has very vehemently framed this issue as being a clerical error in data entry. And it's not. This is the clerk's record of what the judgment of the court was. We have never presented. . . We don't assert that the printout from the clerk's office is an order. No one is confused that just because it's certified that it's an order. If I had called the clerk's office and asked them what the fines and fees were in this case and they had set our printers down, I would say, well, when it's back up, fax it to me with a certified copy so that I can attach it as an exhibit to aid the appellate court and ask the court if I didn't have. . . In this case, the state did not object to our motion to supplement the record with the record. So, in this case, it is a part of the record. But there would be every reason why I could have just asked the court to take judicial notice of the records of the circuit clerk because that is the clerk's duty is to record the orders of the circuit court. And here, you know, the state presents this argument that they don't really exist and that the defendant could just walk into the clerk's office and ask the clerk to fix the order or fix the assessments. But in the real world, which is where defendants live, those fines that have been imposed or recorded by the circuit clerk, if a defendant goes in to pay, the amount the clerk has in their records is what the clerk expects them to pay. And if a defendant walks in and says, oh, well, the judge didn't impose any of the fines, the clerk would say, get an order. And having it taken care of, having this cleaned up on appeal doesn't waste any more judicial resources than what the state is already suggesting with their having a completely separate issue where, you know. So if I have a case where I have a, quote, unquote, real issue, say I'm challenging, you know, raising a reasonable doubt argument, but I also have a sentencing or a fines issue, do I just then raise the reasonable doubt issue and then call up the public defender and say, oh, yeah, motion this up and fix the fines and fees? In the real world, that's not something that they're going to want to take time to do. They're going to say, why don't you just do it in the appellate court? And there's no reason why the appellate court, when it has jurisdiction over criminal appeal, as it does in this case by virtue of the timely filed and proper notice of appeal, it has jurisdiction to correct these errors. And under Castleberry, the only remedy here was to vacate the order, or vacate the unauthorized fines. If the state wants them, now it can use its discretion to whether or not it thinks it's worth the time and money to file a writ of mandamus and come to this court. Well, this case is becoming the poster child for sending this to rules, right? Yes. So we have an error in the trial court. It goes to the appellate court, makes its way to the Supreme Court. If we affirm, then there's a mandamus action back here on this, right, or could be? There could be, but, you know, it is within the state's discretion to not try to collect these. It's also within this court's discretion to deny a writ of mandamus in any case it feels it's not worthy. Just because the state can file a writ of mandamus in every action doesn't mean that it does, and it doesn't mean this court accepts them all. And we have no problem with a rule being made, just not in this case. This isn't a vehicle to make a rule for all unlawful sentence errors in this state. Let me understand your argument with regard to it being just as efficient to take it up on appeal. That's assuming there's another appealable issue. Would your argument hold true if there's nothing else in the record and no reason for a defendant to appeal and the only thing was a clerical error at this time? Well, under current practice, when all there is is an issue of a fine, we file a brief arguing that, as I did in this case, that the fines were unlawfully imposed by the clerk and that they should be vacated under Castleberry. Previously, we might have filed it, you know, the common practice in the Second District was filing an agreed or an unopposed motion for summary disposition where the fines were either ordered pre-Castleberry or ordered reimposed or were vacated. That's in the appellate court. Yes. So it wouldn't be any more time-consuming or less efficient to do it in the circuit court. That's why you're not opposed to a rule if there's an appropriate one. Right. In that situation, if all there was was a fine and now there was a rule that says this must be taken care of in the circuit court rather than the appellate court, then we would file an Anders. Right. But as it stands now, this is a sentencing issue and it's a vital issue, so I cannot file an Anders, you know, when there is an issue regarding the fines that I'm aware of. Are you in agreement, Ms. Montgomery, with Mr. Schneider regarding a rule looking at only statutory unauthorized sentences rather than any sentence issue? I don't want to take a position for my office. You know, in terms of, like, what a rule might look like, I can talk about something that in DuPage County, in the 2nd District, they, in the wake of all these fines and fees headaches that come up, they have made a form that is their standardized form for sentencing that lays out every single statutory fine and fee and talks up and says, provides the statutory authorization for them or the local ordinance that has adopted them, and in those situations, the court can, I don't know if it's a checkbox or they circle it, but it basically forces the court to review all of the things that it can impose, and it also notes which ones are mandatory, and so the court can get it right the first time, and that seems to be working quite well, and so that would be something that we think would be a good idea under a new rule. Additionally, on that form, the judge has to sign off on it, so we know in those cases that the judge imposed these fines, and it's much easier in those cases to be able to say, you know, we don't have a jurisdictional question where the state is hard-pressed to raise a jurisdictional question, as it does in this case, when the order is explicitly signed by the judge, and then those are being entered at the same time as sentencing. If there's no further questions, we would ask the court to affirm the judgment of the appellate court and decline the state's request to suspend its formal rulemaking procedures in this case. However, if the court does change the rule, we'd remind this court that Castleberry was the controlling precedent at the time this case arose and thus controls this case. Thank you. A reply? Mr. Schneider, I know we've been talking mostly about the rule, but with respect to this case, I detected a smile when Ms. Montgomery said, if we're in the real world and the defendant walks in. There's that smile again. Walks into the clerk's office and said, ah, you were in error, just tear this up. I am unfortunately also an inhabitant of the real world, and so in preparation for this argument, I conducted an informal survey, called a bunch of different clerk's offices, and one of the clerks told me, well, there are 102 counties, and there's 110 ways of doing things. When I repeated that to other clerks, they all laughed knowingly, so I assume this is something clerks say when they all get together. And I'm sure that counsel is right, and probably in the majority of court systems, of circuit courts, the clerk is going to want some sort of order. But getting that order is not some herculean task. This is just a matter of, I mean, the court's in session almost every day. You've got an ASA assigned to most courts, an assistant public defender assigned to most courts. Tuck into one of those courts, mention it to one of them, and have them bring it up. Your Honor, before we start today, a quick housekeeping matter. We noticed that there's a scrivener's error in the clerk's conceivable record. Here's the court's written order. Here's a printout of the conceivable record. These don't line up. Could you please order them to correct that? Of course not. I'd like to address a point counsel made just briefly about this being some sort of the proposed rule being an impermissible increase in sentence. The concerns about an increase in sentence on appeal or increase in sentence subsequent to initial sentencing is not simply because the sentence is increasing. The concern is a retaliatory increase in sentence. And that concern is simply not in play when it is an omission of a mandatory term. No one is concerned that if they point out that the court neglected to impose a $100 fine, that when the court then follows the legislative mandate and imposes that fine, is doing so out of malice. Similarly, Castleberry's abolition of the void sentence doctrine was not in any way based on the determination that having a means of correcting these sorts of unlawful sentences was some sort of bad judicial policy. It was based on the recognition that the changes in the 1970 Constitution eliminated the jurisdictional basis for that particular vehicle. But Castleberry expressly recognized that these still need to be corrected. It simply said that now that we no longer have the void sentence doctrine, you'll have to bring it to this court. So clearly, the correction of these sentences is not the problem. The fact that these are being corrected is not the concern. It's just the mechanism that is appropriate to correct it. Should it be in the circuit court or should it be in this court? I'd also like to briefly touch on the question of what is in order. Is this in order? Counsel suggested that the electronic account receivable record, when printed out, that is the clerk's record of the judgment. Respectfully, that's not true. The record of the judgment is the written sentencing order that was entered of record. The clerk's notations on the docket, the clerk's notations on the post-it note, when they go back to enter the data into their extra record account receivable documents, those are not of record. They do not have the force of law. And if they're inaccurate, those inaccuracies should be corrected. For all of the reasons that we've discussed, it can result in someone getting an inaccurate bill, it can result in a kind of confusion, it can result in a Supreme Court case. But it is not because, absent the appellate court's intervention, there is now a new legal obligation imposed on that defendant. I'd also like to address, finally, the question of judicial economy. It was suggested that it is wasteful to correct this in the circuit court rather than the appellate court, which is already in the appellate court. And we can file a brief saying there is this clerical error, as long as we're here we'll correct it, and that way we don't need to file an Anders brief. But judicial economy is not a question of expending the fewest resources possible. It's a question of expending the fewest resources necessary. And correction of clerical errors that could be corrected in the circuit court is not an economical use of appellate resources, and particularly not when those resources are being taken from the constitutionally mandated review of Anders briefs to assure that indigent defendants are receiving the constitutional entitlement to counsel that they're providing with the Sixth Amendment. If you imagine there are two universes of defendants. There are defendants where the only complaint they have is that there is a clerical error in the accounts receivable records. For that class of defendants, if that's cleared up in the clerk's office or the circuit court, they'll just move to voluntarily withdraw their appeal. They don't have any complaint left. They're fine with their conviction. They're fine with their sentence.  If counsel determines there are no non-frivolous issues, we're just going to raise this clerk's error that could be corrected somewhere else, but as long as we're here, we'll do it here. They are not filing an Anders brief. And the appellate court is denied its opportunity to conduct the constitutionally required independent review of that brief to assure itself that the case is so frivolous that we need not go through the normal adversarial testing. And the defendant is also denied the opportunity to file his response to that brief and say, no, no, counsel is giving this particular claim short shrift or counsel ignored this other claim that I think should be pursued on appeal. So it is not actually any more economical to correct these sorts of things on appeal in place of Anders briefs because we are taking resources that should be devoted to review of those Anders briefs and their responses to those briefs and devoting them to correcting essentially scrivener's errors in documents that have no independent legal effect. And for that reason, we ask that the court vacate the ruling below on the basis that there was no appellate jurisdiction. Thank you. Thank you. Case number 121823 will be taken under advice in this agenda number one. Mr. Schneider, Ms. Montgomery, we thank you for your arguing this today and you are excused.